We'll hear the last related matter, which is not sure who the named Appellant is, but it's either National Fire Insurance or Motor Vehicle Casualty versus Thorpe Good morning, your honors and may it please the court David Christian on behalf of Continental Insurance Company and National Fire Insurance Company of Hartford I'd like to reserve seven minutes for rebuttal if it please the court and I want to indicate at the outset Mr. Schiavone who represents some of our co-appellants may take some or all of that time on behalf of his clients separate interests Your honors Yes, your honor, thank you The Third Circuit's en banc decision in the GIT case global industrial technologies Indicates that we should have had bankruptcy court standing under section 1109 B of the bankruptcy code Rather what happened in the courts below in this case is that we were preempted and at the same time denied bankruptcy court standing Normally if you're to be preempted you have standing obviously to complain about that and to make a record about it and the court would Take evidence and hear from you in order to decide What of your arguments might be preempted and what are not preempted on the facts of that case? The court may wonder why why is it we care to have bankruptcy court standing to contest Confirmation of the chapter 11 plan in this case Well, one thing we know from the record is that in 30 years prior to commencement of the chapter 11 case My client and other insurers paid a hundred and eighty million dollars all of our aggregate limits of liability to indemnify for for asbestos related claims upon confirmation of the chapter 11 plan in this case the debtor now has six hundred million dollars in Settlements or promises to pay from the settled insurance companies the same insurance companies that paid a portion of that hundred and eighty million Dollars for the thirty years prior Why is it that a hundred and eighty million dollars over thirty years turned into six hundred million dollars from already? Exhausted carriers in the context of this chapter 11 case Well part of the reason is the allegation being pursued through the chapter 11 plan is that we have potentially unlimited liability that we pay forever And and if I can use this metaphor the plan was sort of the ringing of the dinner bell And encouraged the filing of claims now, that's our litigation position Obviously, we understand the debtor and other proponents of this plan can test that but the point is the bankruptcy court should have heard from us On that issue should have permitted us Discovery into our allegations and conducted an evidentiary hearing rather when Confronted with arguments about the potential harm to my clients and the other carriers by the chapter 11 plan The bankruptcy court remarked as follows. I don't know and I don't care to find out That failure of inquiry is a an error in this case that permeates the chapter 11 plan confirmation proceeding There's some dispute about whether or not you were In a position where you could have pursued discovery, I mean, I think there's in the record there's some reference to the fact that the Judge did said I didn't preclude you from taking discovery The judge struck six of our experts who came to court for the confirmation hearing several of which were going to testify About the harm occasioned on us by the chapter 11 plan That's by the time you got to the confirmation hearing but before that you were you precluded from doing discovery yet? Yes, your honor the bankruptcy court on repeated occasions ordered us not to pursue discovery We submitted detailed discovery requests that were at various times quashed or subject to protective orders. The record is voluminous I understand, but it's also quite clear that we were denied discovery and denied bankruptcy court standing We were denied standing to contest confirmation of the plan Notwithstanding being parties of an interest under section 1109 via the bankruptcy code the third circuit on bond panel and GIT Analyzed this Completely correctly in saying if you're the pockets Who are sought to be picked you have at least bankruptcy court standing to challenge the picking of your pockets The same is true here. Now. There's an attempt by the appellate appellees to distinguish GIT by saying well in that case It was silica a different mass toward and in that case The evidence was that the claims making increased 27 times over the debtors pre-petition experience Well setting aside that silica is a relatively new Toward on the scene compared to asbestos They are both mass torts and we have a similar set of circumstances here where we allege There was improper collusion that goes to the good faith of the plan where we allege that the liability blossomed that the procedures promulgated with the agreement of the debtor and and the the claimants counsel were our lax criteria and Inflated payments that are going to inflate the potential indemnification claims against my clients. So while it may not be 27 times and they may not be silica claims. It's completely analogous Your honor's another important point Question for you. Yes, your honor assuming that we've that we adopted the position of the Third Circuit and said you had bankruptcy standing And should have had a fair shake and challenging the plan and Assuming we said that and what what happens then we send it back Are your clients able to totally undo the plan that has already been? consummated in part or In other words, what's the nature of the bankruptcy court hearing if we give you relief? Judge Gould, I think the court has two options in that regard and both we think would provide effective relief One option is to reverse plan confirmation There's a suggestion of equitable mootness in this case But we think this is sort of the last case for equitable mootness because all the parties are before the court They decided to waive the condition to confirmation that the confirmation order be non-appealable In order as a tactical maneuver in order to increase the likelihood of an equitable mootness finding and moreover as a practical matter there's a payment percentage of 17.5 percent in this case and 600 million dollars in settlements by adjusting the payment percentage and Following through on the settlements perhaps under another chapter 11 plan that complied with the law There's no issue of of disgorgement or practical difficulties in this case All the parties are before the court and the court can fashion effective relief if the court doesn't wish to reverse confirmation Another effective albeit incomplete remedy is to declare that we are not preempted One of the things we object to about this plan is a broad preemption ruling literally unprecedented in the other asbestos related chapter 11 cases That will be used as a sword against us in our post-confirmation litigation with the section 524 G trust The court could declare that because we didn't get our day in court We didn't have an opportunity for the discovery and we didn't have an opportunity to make our arguments about why the plan shouldn't be confirmed then We should not be preempted by that plan And that's a remedy that could be tailored to the facts and circumstances of this case and my client for one would be satisfied with having When we get our day in court in the coverage litigation in LA Superior Court To have the debtor or the trust as its successor make whatever arguments they want to make And and we'd not have our hand tied behind our back by a preemption ruling they get to make whatever Defenses and arguments that we want to make Unfettered by what went on in a bankruptcy proceeding where we were denied standard Can we go back for a moment to your statement about this is the last case where equitable movements might apply? Can't we take some notice of the fact that The plan is being implemented and you made an an effort to have that stayed in The district court the Court of Appeals and Justice Kennedy is that our circuit justice can't we glean from that some? determination if you will that you know, it's You had your day you tried and it didn't succeed and and now Implementation is is on its way. It's not already Judge Seaborg there are two lines of cases in this circuit about equitable mootness One is the Roberts farm line of cases that use equitable mootness as a sanction for not diligently Appealing or pursuing your rights and remedies and really that's the origin of the equitable mootness doctrine This is a sanction for a litigant who sits on his rights. We didn't do that If anything, we were criticized for being overzealous. So that line of cases is inapplicable here There's a second line of cases illustrated best by the Baker and Drake case from this circuit Which recognizes even if you don't obtain a stay pending appeal That's not a reason to bar the courthouse door to the merits that the appellant is complaining of No, I guess what I see from your briefs is this Sort of suggestion that your counterparts are acting in undue haste. They're trying to thwart your rights by rushing Implementation and that argument doesn't have a lot of resonance when you've you haven't been Obstructed in your efforts to stop it and you've not succeeded Well except your honor We were denied bankruptcy court standing and we were preempted by the plan if that's not thwarting us I don't know what is and it's true and I don't I don't mean to cast aspersions at counsel in saying this I think it it's good lawyering on their part that they consciously made the litigation tactical decision to waive the condition to confirmation that there be no further appeals of plan confirmation and to Create equitable mootness and look they're all before the court and if if they lose in pursuing that litigation tactic There's always a disappointed litigant Judge I'm not sure that answers the judge Seaworth's question about The the Concomitant to the Ability to appeal is the ability to seek a stay in order to keep the status quo And if you lose that we see this in all kinds of Congress You may have lost Well to be clear judge Schroeder Equitable mootness is not actual mootness, right? So the court can fashion relief It's the question of whether the court wants to use its power to fashion relief and what we're suggesting here is the advocates on the other side who are all before the court have made the Decision to pursue perhaps a risky strategy to push the envelope And so it's a bad the equities do not favor them in applying equitable mootness So it's not actually moot and it would be inequitable to imply the doctrine here and we think here it would be Interesting here. It would be in neck inequitable mootness Indeed your honor. I agree with judge Gould that it would be inequitable in these facts What's more just as a practical matter because there's a payment percentage because there are six hundred million dollars in settlements Because reversal does not mean there won't be a chapter 11 plan and a trust in this case It just means we'll have our day in court and maybe a plan would be confirmed as more consistent with the requirements of the law There's not a practical obstacle compare this to the Baker and Drake case where you had I think it was hundreds of taxicab medallion holders who've gone through all sorts of exercises to re Incorporate or relicense themselves and the court said nonetheless, we're going to reach the merits We're not going to let equitable mootness be a bar to the inquiry on the merits of the case And and that's what should happen here That's particularly true because we're talking about a debtor that had no operations for the three years prior to bankruptcy It had previously divested itself of all of its valuable assets The old equity in this case is making money under this chapter 11 plan so This is just the kind of case where in equity the court ought to reach the merits rather than barring the courthouse door So I guess what I'd like to say one other point before I sit down and reserve time for rebuttal Is that you're going to hear from opposing counsel? I predict that this plan is insurance neutral and doesn't prejudice us at all. Well, first of all, we were preempted So if that isn't prejudice, I don't know what is and we know the bankruptcy court gave a broad construction of preemption in the context Of our claim appeal because the bankruptcy court said it had a preemption applied to anything pre-petition having to do with the plan and that went back to 2003 when the debtor had different lawyers and And had and the plan was not even a glimmer in the debtor's eyes as an insurer You have a coverage dispute and you're going to be able that's carved out as I understand it And you can go ahead and litigate that in the state superior court. So Except that we're preempted. I'm sorry. I didn't mean to interrupt you, your honor, except that we're preempted We're going to face an argument that some of our discovery in the state court action and some of our arguments in the state court Action are off-limits because of what Judge Bluban did and we know Judge Bluban gave her preemption ruling a broad construction from the context Of our claim appeal. What's more? We know that the quote-unquote insurance neutrality in this plan is insurance neutrality in label only it is riddled with Exceptions and I get that phrase riddled with exceptions from Judge Judith Fitzgerald who authored the original insurance neutrality language from the combustion engineering case She uttered those words in the context of denying Confirmation to a chapter 11 plan in the Pittsburgh Corning case that was labeled insurance neutral like this one but like this one was riddled with Exceptions and I'd refer your honors to the exceptions from the preservation of asbestos insurance defenses and they can be read quite broadly I'll just pick out two and then I'll reserve the balance of my time One is any any defense that was released waived altered or otherwise resolved the debtor will surely the trust I should say will surely argue that some of our defenses and arguments were altered or otherwise resolved by this chapter 11 plan Number four on that list is premised on the commencement of the cases Well, we know from Judge Bluban's rulings in the context of our claim appeal the commencement of the cases in her mind Reaches back to years prior to the filing of bankruptcy when no plan had been formulated And it's not clear that the debtor had even considered filing a chapter 11 case And so this plan is not insurance neutral at the same time It preempts our defenses and yet we didn't have bankruptcy court standing as parties in interest to contest it or to conduct discovery So for that reason it ought to be reversed or as a lesser But somewhat effective relief at least a declaration that because we didn't get our day in court in bankruptcy court We shouldn't be preempted by the results there. Thank you I Good morning, Your Honor May it please the court My name is Tom Patterson And I and my firm have served as Thorpe's appellate counsel through the 30-odd appeals That these appellants have brought in the last three and a half years in this bankruptcy case I would like to reserve three minutes of my time for mr. Lockwood who represents the asbestos claimants committee He may or may not choose to address the court and I understand I'm the one responsible for coming up with those three minutes. So I will endeavor to honor. Mr. Lockwood's request Your honor we are in the odd position of someone Who is claiming they're harmed by something that doesn't harm them And so I'm in the position I guess of denying that someone who thinks they're harmed was harmed But let's just start where things more or less ended with mr. Christian's concern that broad preemption or broad defenses in the plan could be used Elsewhere in the coverage court to impair their rights and in particular he referred to one of the asbestos insurance Defenses that is waived and I'm now in the plan your honor section 1.1 2 and I'll give the court a record site I may not have a pin site, but I can get the plan for you The plan is at er tan at page 110 and section 1.1 2 the language that mr. Christian started to read is a defense that has been released waived altered or otherwise resolved in full or in part and the language that he ran out of time before he could say is In any asbestos insurance settlement or in any other agreement with an asbestos insurer in other words The provision that he complains of is one that has no application to him because they did not enter into an asbestos insurance Settlement the purpose of the waiver is simply to ensure that what an insurer waves in an agreement Stays waived and I think if the court reads the four defenses that are expressly Expressly preserved in section 1.1 2d. Pardon me a through D. The court will find that these are clear of And are certainly not such that they are amenable to manipulation down the road Let me turn to GIT for a minute because standing is a big issue here And then I want to turn to the manner in which they say they're harmed GIT is a rather extraordinary case. It's a 6-4 opinion from the Third Circuit and in Bringing the court's attention to that opinion the appellants neglected to provide the court with the powerful dissent from four judges And so I urge the court if it reads the decision also to read the dissent But even the sixth judge majority is perfectly consistent with what happened here because the Third Circuit in GIT was very careful To distinguish what had happened in GIT from what happened in combustion engineering and in combustion engineering the court recognized that a plan could be insurance neutral and If a plan is insurance neutral then insurers lack standing with respect to the broad application or the broad requirements for confirmation What an insurer always has standing with respect to and what mr. Christian is incorrect in saying That his client was denied standing, but was nevertheless preempted in combustion engineering as in Thorpe the insurers were granted full standing with respect to whether or not the plan was insurance neutral and To the manner in which the plan affected them. There were two ways in which the plan affected them broadly The first was that as initially drafted the plan cut off their contribution rights and did not provide a mechanism for either their Compensation or determination of their fairness and the bankruptcy judge at the first confirmation hearing in January 8 and 9 2009 Said no, no, no you plan proponents. You have a homework assignment you have to prove to me that those contributions from the insurers are fair such that there aren't contribution claims or You have to provide a mechanism to compensate them judgment reduction or or so forth and they won on that issue They made the argument the judge said you win. We had to modify the plan the second issue was with what we refer to as the transfer issue and that is that the plan vests the insurance policy proceeds in a trust as Required by 524 G 524 G says you have to put the assets in a trust Have to use the assets to pay claimants and they were given standing to argue that they argued it in bankruptcy court They argued it in the district court They argue it here and no one ever said that you don't have standing to argue this And similarly if there were other preemption issues and they sort of allude to them, but they don't really say what they are Of course, they have standing to the extent. They're preempted. I can't see how anyone would deny that what they wanted And what they latch on to GIT for is They want standing not to argue it how the plan affected them But they want to compel the debtors to go through a long song and dance of discovery a long song and dance of trial In order to prove up all of the multifarious base requirements for confirmation of a plan of reorganization they want the standing that a creditor would have but they're not creditors and What combustion engineering teaches is that if the plan is broadly insurance neutral, they don't get that broad standing GIT says in a special circumstance They can get that broad standing and what is that special circumstance? That special circumstance is when the plan itself Radically changes the nature of the insurers liability and the court was careful to say by the way That in combustion engineering the effect of the plan was to increase the claims filed by many thousand But the court said but combustion engineering that that does not Amount to a change in the quantum of liability We know combustion engineering had decades of asbestos liability a few more claims here or there is not material But what GIT said is that here the plan created liability It increased the liability for silica claims by 27 times and that change in the quantum of liability Is what gives standing to the insurers in that case that and it appeared from the record? I think the court even said that that the charge of improper conduct was quote not without support in the record of double negatives But there's no such implication here your honor I mean no one would dispute that in this case Thorpe had thousands of asbestos claims. Mr. Christian alluded to the hundred and eighty million dollars that his clients and others paid in loss and indemnity No one denies that Thorpe has continuing ongoing liability in the many thousands of claims that existed at the time of the filing No one would deny that the trust has been created by Consensual settlements with the asbestos claimants with the futures representative with 17 insurers who agreed to kick in 600 million dollars hardly a nuisance settlement No one would deny that the trust is using its money to pay claims. It's paid. I think around 15 million dollars worth so far to hundreds of creditors to this point and That the plan created a vehicle that broadly preserved the defenses to coverage that the non-settling insurers had and allowed them to go back to state court now arguably the Bankruptcy court could have taken a different route the bankruptcy court could have said And I think this is actually one of the suggestions that continental makes in their reply brief That the bankruptcy court would have could have said no no no I'm going to determine these coverage defenses And then we'll find out where we are But that's not an insurance neutral plan and the case law teaches that it is permissible to have an insurance neutral plan And And and return the litigation to the state court No one would deny that the plan facilitated Floripan Pacific's ability to reorganize keep employing people keep in business operate As a functioning economic player and that this was all done within the four corners of the only Mechanism that exists that law for anybody to obtain true peace in asbestos 524 G only way to cut off indirect asbestos claims only way to cut off future claims And probably the only way to effectively cut off direct claims to the extent they exist under state law Now let's go back to combustion engineering for a minute because there's a very important aspect of this case Because the appellants like to always put in their briefs that well Why don't you just give us what there was in combustion engineering you know the nothing here in the so-called super premptory provision? But there was also a tandem provision And it's in the decision. I think at about to page 218 There was a tandem provision that was introduced in the plan in the orders and that tandem provision said that although Nothing in the plan affects you also said that nothing in the bankruptcy would affect the rights and claims of either the debtor or the insurers and This is the essence of insurance neutrality insurance neutrality says what's the before picture? What's the after picture and what goes on in between during the bankruptcy case shouldn't enhance rights, and it shouldn't Diminish the debtor's rights to insurance, and that's what combustion engineering recognized, and that's effectively what has happened here your honor Let's go again. So in your view. What is it that they want? your opponent wants Discovery to establish that it's not the title to establish I think the I think what they want is they want discovery with respect to the foundational requirements for 524 G relief in other words Discovery relating to the manner in which the plan was negotiated. I think good faith is one of the main categories They use it sort of a but that's that's sort of sort of a catch-all requirement in your in your view They want to overturn the whole thing. Oh, yes. Yeah, and in fact your honor I Take them at their word Continental in its reply brief Says that points out view that the district court said you know well What are your alternatives to this vesting in the trust what you know if there's another way to do it then maybe? We won't preempt it and she says well basically they said they're They gave three ways of saying Thorpe shouldn't be reorganized at all and they give those three ways in their brief And they're honest about it, and they say well, maybe that's right Maybe Thorpe shouldn't be reorganized, and I think you know that's what they want But you know it's very clear to us that within the four corners of 524 G We've ticked the boxes and under Sylmar the Ninth Circuit's good faith I also say there are defects in terms of the debtors contribution that it's illusory Effectively don't they make that argument well they do your honor, but let's go to that for a minute It's not unusual to have offsetting or countervailing claims So let's start first with what the debtors and related parties are doing The debtors and related parties are kicking in $500,000 from Far West and the two notes from the reorganized debtor one has been effectively offset at this point By virtue of countervailing claims the other one will be due over a period of years They also contributed their rights to recovery from the manville trust which at a 5% dividend On account of you know indemnity claims against manville which was the manufacturer of this cut off all stuff Is worth many millions of dollars, so what is the debtor getting well? What let's start first with what the debtor gave the debtor contended that it had bad faith claims against its insurers for It doesn't matter what for they had bad faith claims those claims were personal to the debtors if you will those are not indemnity claims those are for harm to the business to the debtor and Those claims were something of value to it and so the debtor in negotiating with its bestest creditors said well This is something that is mine mine the debtor and I don't want to give it to the trust and you know there was back and forth and ultimately was negotiated the debtor got to keep I believe 2% down on a sliding scale of overall insurance recoveries Representing its negotiated share of the bad faith claims So that is the 5 million or so dollars that the debtor reserved for itself that had the effect of diminishing The effect of some of the contributions it was otherwise making but I think if you look at the contribution of the manville trust rights You know the debtor is still making a greater contribution First and second if you look at the the case law you know much of the case law Is and you know sort of disarray on this but some of the case law and I think Quigley as a case Says that the contribution of insurance rights may be sufficient I apologize It's not quickly But there are cases that say the contribution of the insurance rights may be sufficient in and of itself and this debtor Undisputably gave 600 million dollars of settled insurance rights as well as turning over You know whatever claims exist against our obstreperous friends on the other side of the aisle So I think at the end of the day your honor the the insurers are not asking here for Neutrality what they're asking for is in effect a pre-determination That they have rights that should be recognized and let's sort of take a look at a couple of them Some of them broadly fall under the category of what I'll call cooperation This is the concern that post confirmation post effective date the trust will not be A friendly policyholder to their insurer and not comply or live up to the obligations under the policies Well, there are two answers to this first The trust has undertaken that obligation under the plan and it couldn't be clear at section five point four point one And it says that they undertake the obligations assume the obligations under the policies that you could swell. Maybe they won't Well, if they don't then it creates whatever coverage defense exists under applicable law so be the trust has a risk if it wants to fool around with this and Whatever the letter of or spirit or whatever the requirement is as a matter of state law to live up to those policies It has to live up to they say well, but a trust isn't really very good. What if I need? Whatever the state law equivalent is of a 30b6 witness. What if I need a representative of Thorpe? Well, the answer is that the very same section that I alluded to section five point four point one Makes clear that Thorpe's obligations are not exonerated by virtue of this Thorpe has whatever ongoing obligations It otherwise has and if she's well, what incentive does Thorpe have? I would suggest that if Thorpe blew off its obligations and gave rise to a coverage defense that the trust may Sort of rotate its guns and come knocking on Thorpe's door so I think Thorpe has every economic incentive to live up to that obligation and there isn't a shred of evidence or Shred of reason to think that these individuals and entities won't live up to their obligation. They have every economic incentive to do so I also want to deal with I Say it's an argument, but it's really more of a slogan than an argument that the trust is quote claimant controlled Well, the trust has two Now three independent trustees One of them was one of Thorpe's former coverage counsel and these trustees have full fiduciary power To exercise the rights and obligations and powers under the trust There is also something called the trust advisory committee Which is some claimants lawyers and there's a futures representative who represents the futures claim and there are certain things that the trustees cannot do Without the consent of the attack or the futures or both and I think this is where the claimant controlled allegation comes from But the trust has an out both in section 5.8 and 6.6 of the trust agreement it says if the Attack or the futures won't give their consent to something that the trustees think is fiduciary required The trustees are authorized to go to court and let a court decide So in all respects, they have unfettered ability to go to a court and say, you know We're being asked to do something or we're being constrained from doing something that we think is inconsistent with our obligations or duties And we want the court to clarify that what court would they go to? At present your honor. The the bankruptcy court has ongoing administration oversight over the trust All right, how long is that Provided in the in the agreement. Is that how long does that exist for the duration of the administration of the trust? In a sense, I don't know because I would think at some point or with respect to some issues It could well be that the bankruptcy court would like jurisdiction And I think that's what sort of happens is the jurisdiction tails off But there's no express time constraint on the exercise of that of that power Council I don't want to interrupt your Answer to judge Schroeder, but you had said you wanted to leave seven minutes for your colleague Thank You judge Gould I actually said three and I see I'm down to that but just before and mr Lockwood will forgive me if I use 45 seconds because I do want to talk about mootness for just a second the Again I think we sort of start with a disagreement over the facts not all of the parties necessary To this appeal or necessary to a mootness determination are before this court The settling insurers are not before this court. They contributed 135 million dollars in express reliance on the issuance of the injunctions They are not before this court And if they lose the benefit of those injunctions to be sure they have, you know But those injunctions there is the gold that they paid for because that's what protects them from contribution claims That's what protects them from direct actions. That's what protects them from the the future claims Second the asbestos claimants are not before this court There's an asbestos claims representative but the claimants who voted on a plan that said that these rights will vest in a trust are not before this court and I would submit your honor that it would be inequitable to overturn the plan or give the piecemeal relief sought Under the current circumstances. I'll just end with a thought that Well, those entities are not before the court and they are they relied on the plan And the case law says that we're not all the necessary parties are before the court then mootness may be May be required and I'll just end with one last thought that arose a little bit in the prior colloquy It comes from the Continental Airlines case in the Third Circuit its first Significant case on mootness and that is that the question isn't whether Those who obtained the order Confirming the plan acted reasonably in relying on it because there was a valid unstayed court order There were claimants who had gone unpaid since 2005 There was a need to get a loan in place There was a need to get out of bankruptcy so the companies could operate obviously bankruptcy didn't enhance its operations There were business purposes to consummate and go forward The question is not whether that was reasonable the question that question was answered When all of the courts that were faced with the issue denied the stay. Thank you I'll hear about it Very briefly your honor The Both the JIT case and the standing issue in this case have been misstated by counsel for the insurers the JIT case involved among other things an assignment of insurance by the objecting insurers to the silica trust and mr. Kristen's clients That he says with a broad preemption ruling that you can look at my claims that client Weren't being assigned to the trust and the preemption ruling that he was discussing in that case has nothing to do with the preemption Issues that they were denied coverage on as mr. Patterson pointed out they were given standing on an issue by issue paste basis the JIT case doesn't even discuss Issue by issue standing which this court is fully familiar with and as presidents abstain and the the the point here is that my constituency creditors in this case Who are the only parties that have claims against the trust made a deal? Which they claim they were denied discovery of but which is clear on the face of the plan to accept certain Trade-offs with the debtor in exchange for providing the consideration including insurance to the trust The insurers here have no claims against that trust. They are utterly unaffected by whether they get less or more Thank you, Your Honor Morning your honors Tanker skivony for with Melvin Meyers for appellants Cal Union motor vehicle casualty and Central National Insurance Company to see where you asked my colleague a question about whether there was some dispute in the record about whether the Discovery had been sought opportunities have been sought I think respectfully you may have confused the two appeals on the proof of claim appeal that Continental had there was a dispute about whether or not they fairly had it an opportunity to take a discovery or not on the Confirmation appeal this appeal there is no dispute on that issue and and the order I would I would point your honors to is in tab 24 of our appendix through judge blue bond says Categorically she prohibits all discovery except the serving of contention and erogatories In or close to that she also quashed 25 subpoenas that we serve for fact witnesses that we were going to bring to the confirmation hearing Shortly thereafter or at the confirmation hearing we brought I think seven maybe eight expert witnesses including Professor Jeffrey hazard Professor Harrington from the University of Chicago and a series of other very very prominent experts each one Different areas of the plan where we felt our rights were impaired in one way or another The record at the end of the day on this on this appeal the evidentiary record I know I myself I had delivered two three weeks ago the record so I could study it to get ready for this It's some things you have to see really to understand the entire Evidentiary record that supports this hundred multi hundred million dollar plan comes down to two affidavits One is tab is found in tab 27 of the Appellees record it's s it's a tab 27 s er 1102 that's mr. Renfrews Declaration it's nine pages the other one is the the gentleman who walks away and makes a tremendous profit from this case mr. Foulkes it's tab 86 er 1409 nine pages according to the paucity of Evidentiary record doesn't mean you have standing That's true. That's true your honor, but the point here to be made We weren't we weren't given an opportunity to cross on these right entire assumes you have standing to do that right that's right We came to that evidentiary hearing Or what was supposed to be an evidentiary hearing with the desire to want to put on evidence about about what our How our rights were impaired by this plan? Specifically on the motion to quash We said the fact witnesses we were calling were being called so we could present evidence to show how our risks were increased and how our burdens Were were it also increased by this plan. It was all quashed the entire Set of findings about how we don't have any rights here Is supported by these two little affidavits how the preemption rulings are all supported by the two affidavits all the rulings about? the extraordinary channeling injunction meaning the requirements of the code the propriety of the Contributions all the requirements of 1129 of good faith. They're all supported by two affidavits That we're not subject to any cross Your honor if we had had an opportunity to put on a case I know it's it's hard when you sort of look at these provisions one thing you could do is compare Just compare the CE and GE super preemptory clause that says it preserves our rights to what the This complicated series of provisions in this plan, and it's immediately apparent They're totally different the language that we we actually in the in the court below the district court We suggested gee put it put put in the CE language. We offered that as a possible remedy We offer it still now you heard Mr.. Christian offer that we were told no geez that would have you know dramatic change Because we're trying to do all kinds of different things here You have to understand that this plan How these provisions work together are substantially different and worse really from CE and What was happening in in in GIT because not only is a trust being created that plaintiffs lawyers then? Design the criteria to allow their own claims and value them and then approve them Which I don't know how you could think would generate anything other than more claims Than we would have before and that's evidence We would put on if we had an opportunity to do it But this case this case is very different because it also allows the same entity this this claim control trust To pass through into the tort system the California state tort system Claims to be brought anew I mean keep in mind 524 G when Congress brought about one of its goals intentions of Congress was to stop asbestos litigation to bring about finality this plan will not do that and It will it will not only not do that it will do it will cause we believe tremendous tremendous damage to our clients And to the state court system in California We would like the court outdoors to be open to us so we could present evidence on that if you look at five point one point six Counsel yes, I have a question for you same one. I asked your colleague assuming we held that the insurers Were entitled to standing and should have gotten some more process and Remanded What would be the shape and? Scope of the hearing in the bankruptcy court. You know what it would it be to challenge the whole 524 plan or would it be just to add some Provisions to it and son in other words What would you envision if we gave you relief? We would envision a an evidentiary hearing below where we'd have an opportunity to put on evidence to show The how these provisions impact us how they increase our risks and burdens. I think we'd be prepared to suggest alternatives in connection with that hearing that Would would eliminate or reduce Those risks and burdens with the notion of trying to bring forward possibly a confirmable plan It's not our goal to be involved in litigation endlessly here. We've come we came forward to the district like this We don't like this plan your honor, and I think you have to understand What we would be facing in the tort system you heard some suggestion of this Imagine this you have to imagine the real practicality of we get cases passed through the tort system these cooperation rights are Incredibly important to an insurer when we need to look and say who's going to sign a 30b Says that as counsel is indicated they take on the obligation And and to the extent that they don't live up to the obligation there are some remedies that you have your honor You have to look very closely at how those provisions work together And they say they take on the obligation first of all is that an is that illusory in the first place? Imagine the whole notion of us picking up the phone and calling the claimant lawyers and say We've got our interrogatories to sign this week You know what would you mind signing them or who are you gonna bring to the trial for us? I mean the whole notion of it is sort of you're saying that inevitably they'd breach their fiduciary duty They can't they can't possibly be In any way a real replacement for a company that wants to defend itself. Okay. Well we may not Reach the end of this entire dispute today, but we have reached the end of time for argument so Thank you. That's the case. It really matters just argued are submitted and the court stands adjourned
judges: Seeborg, Schroeder, Gould